UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ARTHUR WAYNE ELLIS, | ) | Case No. 04-06834-TOM-7 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| ELEANOR M. TYSON, | ) | |
| | ) | |
| Plaintiff | ) | A.P. No. 04-00207 |
| | ) | |
| vs. | ) | |
| | ) | |
| ARTHUR WAYNE ELLIS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This adversary proceeding is before the Court following a trial on July 18, 2005, on the *Complaint* filed by the Plaintiff, Eleanor M. Tyson ("Ms. Tyson" or "Plaintiff"). Appearing at the trial were: M. Scott Harwell, attorney for Ms. Tyson; Daisy Holder, attorney for the Debtor / Defendant, Arthur Wayne Ellis ("Mr. Ellis" or "Debtor"); Ms. Tyson; Mr. Ellis; Bennie Dixon, witness for Ms. Tyson; and James Williams, witness for Ms. Tyson. The Court has jurisdiction pursuant to 28 U.S.C. §§151, 157(a) and 1334(b) and the United States District Court for the Northern District of Alabama's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I) and (J).[2]

---

[1] 28 U.S.C. § 151 provides:

In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority

The Court has considered the pleadings, the arguments of counsel, the testimony, the evidence admitted and the law and finds and concludes as follows.[3]

## I. FACTUAL BACKGROUND

Ms. Tyson and Mr. Ellis first met in the late-1970's or early-1980's while both were employed by the Birmingham Police Department ("BPD"), Mr. Ellis as a patrolman and Ms. Tyson in fingerprinting. They had a romantic relationship lasting four or five years. They rekindled their

---

conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as otherwise provided by law or by rule or order of the district court.

28 U.S.C. § 157(a) provides:

Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

28 U.S.C. § 1334(b) provides:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

The General Order of Reference as amended provides:

The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[2] 28 U.S.C. §§ 157(b)(2)(I) and (J) provide:
    (b)(2)Core proceedings include, but are not limited to–
        (I) determinations as to the dischargeability of particular debts;
        (J) objections to discharge [.]

[3] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

2

relationship in early 2003, and Mr. Ellis moved in with Ms. Tyson a short time later. Ms. Tyson testified that she did not know Mr. Ellis was married when their second relationship began in 2003 but discovered it soon thereafter and they continued living together until their relationship ended seven months later.

During that seven month period, Ms. Tyson allegedly paid numerous bills for Mr. Ellis including, *inter alia*, mortgage payments, utility bills and tuition for truck driving school. She also allegedly purchased numerous items for him including, *inter alia*, building supplies and clothing and gave him cash on several occasions. At trial, exhibits purporting to show these expenditures by Ms. Tyson were introduced.[4] She explained each exhibit's significance and the debt it allegedly evidenced. For each exhibit, Ms. Tyson's attorney asked if Mr. Ellis had promised to repay her. She answered "yes" each time. She said all of the expenditures were loans and she expected to be repaid by Mr. Ellis. She also testified she and Mr. Ellis reached an agreement under which he agreed to repay her all of the money loaned.

On only one occasion did Mr. Ellis sign a promissory note ("Note") to Ms. Tyson. Plaintiff's Exh. 3. Pursuant to the terms of that Note, which was executed on April 23, 2003, Mr. Ellis agreed to repay Ms. Tyson a total of $1,538.00 at $75.00 per week. Because Mr. Ellis was unemployed at the time, repayment was to begin one month after Mr. Ellis returned to work. Mr. Ellis testified that he intended to repay the debt evidenced by the Note when he signed it.

Mr. Ellis explained that while he was living with Ms. Tyson he traded mostly in cash and Ms. Tyson suggested she write checks to pay his bills and expenses because they would provide better

---

[4] The Plaintiff introduced more than thirty receipts, cancelled checks and other documents at trial.

3

receipts. Acknowledging he was a poor records keeper, he said that he accepted her offer but gave her cash to cover the checks written on his behalf.

Mr. Ellis testified that Ms. Tyson had discussed marriage on several occasions and offered to pay for him to divorce his wife. Ms. Tyson denied both allegations. The two did, however, attend counseling for their relationship. Ms. Tyson testified that Mr. Ellis initiated the counseling "to establish that she could trust him."

After the relationship ended, Ms. Tyson filed a *pro se* lawsuit against Mr. Ellis in Jefferson County District Court on March 3, 2004, alleging she was owed $9,815.59 for "Cash Loans, Rent, telephone bills, Electric (Power bill), building Supplies[,] Clothing, House payment, tuition, Driving School (Truck), Training program car salesman, Electrical repairs, repairman, Gas [and] misc."[5] Defendant's Exh. 2. Following a bench trial at which both parties were present, a judgment was entered in Ms. Tyson's favor for $9,011.41 on June 29, 2004.[6]

Mr. Ellis filed this individual no-asset Chapter 7 bankruptcy case on August 6, 2004 and included Ms. Tyson as an unsecured nonpriority creditor holding a claim of $9,012.00. On November 5, 2004, Ms. Tyson filed this adversary proceeding alleging the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)[7] and also objecting to discharge pursuant to 11 U.S.C. §§

---

[5] It is unclear whether Ms. Tyson later retained counsel in the state court action.

[6] Prior to the trial, counsel for both parties met with the Court and agreed that the state court judgment is res judicata as to the amount and validity of the debt owed and this adversary proceeding trial is to determine if the debt is dischargeable. Mr. Ellis continued to dispute owing the debt. However, this Court is barred by the *Rooker-Feldman* doctrine from reviewing the validity of the amount of the state court judgment.

[7] The Complaint does not indicate whether the Plaintiff is relying on 11 U.S.C. § 523(a)(2)(A), (B) or both.

4

727(a)(2)(A) & (B), 727(a)(3), 727(a)(4)(A) & (D) and 727(a)(5).

## II.  CONCLUSIONS OF LAW

The central goal of the bankruptcy system is to provide certain debtors with a "fresh start" in which to enjoy "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 LED.2d 755 (1991)(quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)).  This opportunity for a completely unencumbered "fresh start" is limited, however, to only the "honest but unfortunate debtor." Id.

### A.  Denial of Discharge

The Bankruptcy Code requires that debtors receive a discharge unless one of the statutory exceptions found in 11 U.S.C. § 727 is proved.  Denial of discharge is a harsh remedy, one that should be exercised only under extreme circumstances.  To further the "fresh start" objective of the Bankruptcy Code, the statute should be strictly construed against the party objecting to discharge and in the light most favorable to the debtor.  See Overly v. Guthrie (In re Guthrie), 265 B.R. 253, 263 (Bankr. M.D. Ala. 2001); Behrman Chiropractic Clinics, Inc. v. Johnson (In re Johnson), 189 B.R. 985, 992 (Bankr. N.D. Ala. 1995).  The plaintiff has the burden of proof on a complaint objecting to discharge.  Fed. R. Bankr. P. 4005.

Ms. Tyson contends that Mr. Ellis should be denied a discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A) & (B), 727(a)(3), 727(a)(4)(A) & (D) and/or 727(a)(5).[8]  However, the Court finds that

---

[8] In pertinent part, 11 U.S.C. § 727 provides:

  (a) The court shall grant the debtor a discharge, unless–
     (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of
     the estate charged with custody of property under this title, has transferred,

5

Ms. Tyson did not offer any testimony or evidence suggesting that Mr. Ellis made a false oath, withheld any information or lost any assets. Therefore, she provided insufficient evidence at trial to support a denial of discharge under §§ 727(a)(4)(A) or (D) or 727 (a)(5), therefore the Court will not further examine whether discharge should be denied under those sections. The Court is left only to determine in detail whether denial of discharge is proper under §§ 727(a)(2)(A) or (B) or 727(a)(3).

### 1. Section 727(a)(2)(A) & (B)

Section 727(a)(2) of the Bankruptcy Code is intended to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of assets. Specifically, § 727(a)(2)(A) provides that discharge should be denied to a debtor who, within one year of filing, destroys or conceals his or her assets that may otherwise have been available to satisfy creditors' claims. 11 U.S.C. § 727(a)(2)(A). Similarly, § 727(a)(2)(B) provides that discharge

---

removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
    (A) property of the debtor, within one year before the date of the filing of the petition; or
    (B) property of the estate, after the date of the filing of the petition;
(3) the debtor has concealed destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; [or]
(4) the debtor knowingly and fraudulently, in or in connection with the case—
    (A) made a false oath or account; ...
    (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;
(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet debtor's liabilities.

6

should be denied to a debtor who, after filing, destroys or conceals assets of the estate that may otherwise have been available to satisfy creditors' claims. 11 U.S.C. § 727(a)(2)(B).

After reviewing the record, the pleadings and the trial testimony, the Court is unable to determine what, if any, property Mr. Ellis allegedly concealed or destroyed. There is no evidence of depleted bank accounts, property transfers or the like. Further, neither Ms. Tyson nor Mr. Ellis testified about concealment or transfer of any property.

Based on the foregoing, the Court finds that Ms. Tyson did not prove that Mr. Ellis concealed or otherwise disposed of his assets or assets of the estate. Thus, she failed to satisfy her burden of proof under this section. Accordingly, the Court overrules Ms. Tyson's objection to the Debtor's discharge under 11 U.S.C. § 727(a)(2)(A) or (B).

### 2. Section 727(a)(3)

Section 727(a)(3) is intended to prevent the discharge of a debtor who fails to maintain or preserve books or records. The application of §727(a)(3) requires a two-tiered analysis. First, the court must determine whether the debtor has maintained adequate books and records from which his or her "financial condition or business transactions might be ascertained." 11 U.S.C. § 727(a)(3). Second, if the debtor failed to maintain adequate records the court must determine whether such failure was "justified under all of the circumstances of the case." Id.

The initial burden of proof is on the plaintiff to show that the debtor does not have sufficient books and records from which to satisfactorily ascertain the debtor's financial situation and business transactions. See Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 619 (11th Cir. 1984). Once proven, the burden shifts to the debtor to explain the lack of financial records in a satisfactory manner. Id. The explanation must consist of more than just the debtor's assertion that the records

7

no longer exist or are no longer available. Christy, et al. v. Kowalski (In re Kowalski), 316 B.R. 596 (Bankr. E.D.N.Y. 2004).

The record keeping requirement of § 727(a)(3) has been broadly construed. The debtor is not required to maintain an impeccable system of bookkeeping; rather, a debtor may satisfy the requirement if "the books and records are kept ... so as to reflect, with a fair degree of accuracy, the debtor's financial condition and in a manner appropriate to his business." Emerson v. Stephenson (In re Emerson), 244 B.R. 1, 25 (Bankr. D.N.H. 1999)(citations omitted). See also Turner v. Tran (In re Tran), 297 B.R. 817, 835 (Bankr. N.D. Fla. 2003); Phillips v. Nipper (In re Nipper), 186 B.R. 284, 289 (Bankr. M.D. Fla. 1995)(a full accounting of every transaction is not required so long as the debtor maintains "some written records from which present and past financial condition of debtor may be ascertained with substantial completeness and accuracy.").

Ms. Tyson failed to satisfy the initial burden of proof that Mr. Ellis did not maintain adequate records from which his financial condition could be ascertained. She did not state what specific financial records Mr. Ellis failed to maintain or what additional records may be necessary to adequately assess his finances, and the Court will not guess as to what those records may be.

The only trial testimony concerning Mr. Ellis's financial records, or lack thereof, concerned his failure to maintain written receipts of cash payments he allegedly made to Ms. Tyson and mortgage payments he made to Washington Mutual. Whether or not he kept these records is insufficient as they would provide no additional insight into his overall financial condition. Further, there is no evidence that Ms. Tyson ever requested additional financial information from Mr. Ellis. Finally, no evidence was presented showing Mr. Ellis destroyed, concealed or mutilated any of his financial records.

Mr. Ellis is an individual debtor whose financial situation is not extremely complex. Like the vast majority of debtors before this Court, he was a poor record keeper, traded mostly in cash and rarely kept receipts as proof of payments made. However, simply being a poor record keeper does not warrant denial of discharge under § 727(a)(3). While his financial records may not be impeccable, the Court is satisfied that they are sufficient in this case.

Based on the foregoing, the Court finds that Ms. Tyson did not prove Mr. Ellis concealed, destroyed or failed to adequately maintain his financial records. Thus, she failed to meet her initial burden of proof under this section. Accordingly, the Court overrules Ms. Tyson's objection to the Debtor's discharge under 11 U.S.C. § 727(a)(3).

### B. Dischargeability of the Debt

Section 523 of the Bankruptcy Code outlines exceptions to discharge in bankruptcy proceedings. Exceptions to discharge are to be construed strictly against the objecting creditor in order to give effect to the fresh start policy of the Bankruptcy Code. See Hope v. Walker (In re Walker), 48 F.3d 1161 (11th Cir. 1995). A creditor seeking to except a debt from discharge bears the burden of proof as to each particular element of nondischargeability by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 LED.2d 755 (1991). Ms. Tyson contends that the debt owed to her is nondischargeable under 11 U.S.C. §§ 523(a)(2).[9] She did not,

---

[9] In pertinent part, 11 U.S.C. § 523 provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–
        (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]
        (B) use of a statement in writing--

9

however, specify upon which subparagraph of § 523(a)(2) she was relying. Therefore, the Court must examine non-dischargeability under both subparagraphs.

### 1. Section 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code provides that a debt for money, property, services, or an extension, renewal, or refinancing of credit will not be discharged to the extent it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The elements that the plaintiff must establish for a determination of nondischargeability under this section include: 1) the debtor received or obtained money or property from the plaintiff, which creates a debt or obligation to the plaintiff; 2) the money or property was obtained and the debt incurred by either false pretenses, a false representation, or actual fraud; 3) the false pretense, false representation, or actual fraud was done by the debtor either knowingly or with reckless disregard of the truth; 4) the debtor's conduct was with the intention to deceive, with the intention that the plaintiff detrimentally rely, or with the intention that the plaintiff be given a false impression; 5) the plaintiff justifiably relied on the debtor's conduct or misrepresentation; and 6) the plaintiff suffered damages as a result of the debtor's actions. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998).

The first element requires a finding that Mr. Ellis received money or property, thereby creating an obligation to Ms. Tyson. Based on the state court judgment, the testimony and the

---

(I) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive;

10

evidence, the Court finds Mr. Ellis received money from Ms. Tyson thereby creating an obligation to her. Therefore, the first element of the § 523(a)(2)(A) was met.

The second element requires a finding that the debt was incurred through false pretenses, a false representation or actual fraud. Because false pretenses, false representation and actual fraud are placed in the disjunctive, Congress intended that any one of these is sufficient to establish nondischargeability under § 523(a)(2)(A).

### I. False Pretenses

The Court will first address whether Mr. Ellis incurred the debt by false pretenses. Judge Benjamin Cohen has defined the requirements for false pretenses:

> The concept of "false pretenses" is especially broad. It includes any intentional fraud or deceit practiced by whatever method in whatever manner. False pretenses "may be implied from conduct or may consist of concealment or non-disclosure where there is a duty to speak, and may consist of any acts, work, symbol or token calculated and intended to deceive."

FCC National Bank v. Gilmore (In re Gilmore), 221 B.R. 864, 872 (Bankr. N.D. Ala. 1998) (quoting BLACK'S LAW DICTIONARY 602 (6th ed. 1990)). False pretenses have also described as "a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor." Sterna v. Paneras (In re Paneras), 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996).

Ms. Tyson testified that she knew Mr. Ellis was between jobs. She also had to know he was considering a new field of employment because he was attending truck driving school. No facts or circumstances were created or manufactured to induce her to loan money. There is no evidence that Ms. Tyson was wrongly induced into making expenditures on Mr. Ellis's behalf nor does the

evidence show that Mr. Ellis's actions were calculated to deceive Ms. Tyson. Even if Mr. Ellis promised to repay her as Ms. Tyson claims, no evidence was offered showing those promises were made in an effort to wrongfully induce her into giving him money.[10] For the foregoing reason, the Court finds that Mr. Ellis's debt to Ms. Tyson was not incurred through false pretenses.

### ii. False Representation

The Court will now consider whether Mr. Ellis incurred the debt through a false representation. While a false pretense generally pertains to implied misrepresentations or conduct creating a false impression, "false representation involves an expressed misrepresentation by a debtor." Castro v. Zeller (In re Zeller), 242 B.R. 84, 87 (Bankr. S.D. Fla.1999). The First Circuit Court of Appeals has further defined the requirements for a false representation:

> If, at the time he made his promise, the debtor did not *intend to perform*, then he has made a false representation (false as to his intent) and the debt that arose as a result thereof is not dischargeable (if the other elements of §523(a)(2)(A) are met). If he did so intend at the time he made his promise, but subsequently decided that he could not or would not so perform, then his initial representation was not false when made.

Palmacci v. Umpierrez, 121 F.3d 781, 787 (1st Cir. 1997).

Ms. Tyson appears to argue that Mr. Ellis's verbal promises to repay constitute false representations. However, she offered no evidence, other than that they were not repaid, that the promises were made without the intent to perform. Failure to repay a debt does not by itself prove false representation by a debtor. The only written promise to pay is the Note, and according to Mr.

---

[10] Despite the state court judgment and a stipulation prior to trial as to the amount of the debt, Mr. Ellis continued to dispute that he promised to repay Ms. Tyson most of the money other than what was evidenced by the Note.

12

Ellis's trial testimony, he intended to repay the debt evidenced by the Note when he signed it.[11] Because he intended to perform when he signed the Note it may not be construed as a false representation.

Therefore, based on the foregoing, the Court finds that Mr. Ellis's debt was not incurred through false representation.

### iii. Actual Fraud

Finally, the Court will consider whether Mr. Ellis incurred the debt through actual fraud. The Eleventh Circuit Court of Appeals has determined the elements of actual fraud to be that "(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998). See also Field v. Mans, 516 U.S. 59, 73-75, 116 S.Ct. 437, 445-446 (1995) (holding that section 523(a)(2)(A) requires justifiable, but not reasonable, reliance).

As explained above, there is no evidence that Mr. Ellis made any false representations, either verbal or written, with the intent to deceive Ms. Tyson. Because a false representation is an element of actual fraud, and that element cannot be proven, the Court finds that the debt was not incurred through actual fraud.

Based on the foregoing, the Court finds Ms. Tyson failed to meet the second required element for nondischargeablity under 11 U.S.C. § 523(a)(2)(A), and thus the Court need not discuss the remaining issues.

---

[11] The Plaintiff introduced inconsistent testimony from Mr. Ellis's deposition on this matter. The Court has weighed the evidence and Mr. Ellis's demeanor while testifying and believes Mr. Ellis's trial testimony was truthful.

13

Case 04-00207-TOM    Doc 24    Filed 08/04/05    Entered 08/04/05 15:57:49    Desc Main
Document    Page 13 of 16

**2. Section 523(a)(2)(B)**

Section 523(a)(2)(B) of the Bankruptcy Code provides that a debt for money, property, services, or an extension, renewal, or refinancing of credit may be excepted from discharge to the extent it was 1) obtained through the use of a written statement that is that is materially false, 2) respecting the debtor's or an insider's financial condition, 3) on which the creditor reasonably relied and 4) that the debtor caused to be made or published with intent to deceive. 11 U.S.C. § 523(a)(2)(B).

The first element of this section requires proof that Mr. Ellis received money based on a materially false written statement. The only written statement executed by Mr. Ellis and introduced at trial was the Note. Based on his trial testimony, Mr. Ellis intended to repay the debt when the Note was executed. Therefore, the Note is not a materially false written statement. Because the Note is not a materially false written statement, and no other written statements were introduced into evidence, it is impossible for Ms. Tyson to satisfy the first element of 523(a)(2)(B).

Therefore, based on the foregoing, the Court finds Ms. Tyson failed to meet the required elements for nondischargeablity under 11 U.S.C. § 523(a)(2)(B).

### III. CONCLUSION

Based on the evidence and testimony in this case, the Court finds that Ms. Tyson has failed to prove by a preponderance of the evidence that the debt owed to her by Mr. Ellis should be declared nondischargeable under 11 U.S.C. § 523(a)(2)(A) or (B). The Court further finds that Ms. Tyson has failed to prove by a preponderance of the evidence that Mr. Ellis should be denied a discharge under 11 U.S.C. §§ 727(a)(2)(A) or (B), 727(a)(3), 727(a)(4)(A) or (B), or 727(a)(5). Accordingly, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that the relief sought by the Plaintiff, Eleanor M. Tyson, to declare certain indebtedness of the Debtor, Arthur Ellis, nondischargeable in accordance with 11 U.S.C. §§ 523(a)(2) is **DENIED**. It is further

**ORDERED, ADJUDGED, AND DECREED** that the relief sought by the Plaintiff, Eleanor M. Tyson, to deny discharge to the Debtor, Arthur Ellis, in accordance with 11 U.S.C. §§ 727(a)(2)(A) or (B), 727(a)(3), 727(a)(4)(A) or (B), or 727(a)(5) is **DENIED**. It is further

**ORDERED, ADJUDGED, AND DECREED** that the indebtedness of the Debtor, Arthur Ellis, to the Plaintiff, Eleanor Tyson, is **DISCHARGEABLE** and shall be included in the discharge of the Debtor to be entered in this case by order of this Court.

Dated this the 4th day of August, 2005.

                                                  **/s/ Tamara O. Mitchell**
                                                  TAMARA O. MITCHELL
                                                  United States Bankruptcy Judge

TOM:jdg

xc:    M. Scott Harwell, Attorney for the Plaintiff, Eleanor Tyson
        Daisy Holder, Attorney for the Debtor / Defendant, Arthur Ellis

16